**Albert L. LIPSCOMB et al.,**
**Plaintiffs-Appellees,**

v.

**Mayor Wes WISE et al., Defendants,**

**Frank P. Hernandez and George Solaris,**
**Intervenors-Appellants.**

No. 80–1865
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 22, 1981.

**320**

Hernandez, Inc., Frank P. Hernandez, Dallas, Tex., for intervenors-appellants.

Joseph G. Werner, Kent S. Hofmeister, Dallas, Tex., for plaintiffs-appellees.

Before GEE, RUBIN and RANDALL, Circuit Judges.

PER CURIAM:

The district court awarded attorney's fees to two public service agencies and three individual lawyers, all of whom represented plaintiffs or intervenors. It denied fees to two lawyers who represented one group of intervenors at an early stage of this lengthy proceeding.[1] These lawyers appeal. We find that they have standing to appeal, but that the district court acted within its discretion in concluding that the intervenors were not prevailing parties at the time when or on the issues regarding which they were represented by the appellant lawyers and we, therefore, affirm.

We must first consider whether plaintiffs' attorneys have standing to appeal. Ordinarily, an appeal from a judgment may be taken only by a party-litigant adversely affected by it. In theory, attorneys for a litigant are not personally affected by a judgment. Even in the limited class of cases in which attorney's fees may be awarded, the award is made to the prevailing party, not to counsel. However, as a practical matter, the lawyer is frequently the only person adversely affected when attorney's fees are denied. An indigent client has no real financial interest in whether his attorney is awarded fees. If the client is not indigent, the attorney may still be the party aggrieved in fact, if the client's net recovery is not affected by the amount allowed for fees. When they are the real parties in interest, attorneys are entitled to a day in court.

The lawyers' claims are cognizable under Article III. If the district court's order is affirmed, they will suffer an economic injury in fact. *See Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Linda R. S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). They have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962). Turning to congressional intent, we believe that allowing attorneys to appeal from a denial of fees under 42 U.S.C. § 1973*l*(e) "serves the clearly expressed legislative purpose of en-

[1]. The history of this case may be traced in *Lipscomb v. Jonsson*, 459 F.2d 335 (5th Cir. 1972), *on remand, Lipscomb v. Wise*, 399 F.Supp. 782 (N.D.Tex.1975), *reversed*, 551 F.2d 1043 (5th Cir. 1977), *reversed sub nom., Wise v. Lipscomb*, 437 U.S. 535, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978); *on remand, Lipscomb v. Wise*, 583 F.2d 212 (5th Cir. 1978).

couraging private enforcement of the civil rights laws." *Palmigiano v. Garrahy*, 616 F.2d 598, 602 (1st Cir. 1980); *Torres v. Sachs*, 538 F.2d 10 (2d Cir. 1976). *See Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980) (discussing the civil rights laws generally). Attorneys who bring civil rights suits on behalf of their clients may be secure in the knowledge that they can pursue any legitimate right they may have to attorneys fees in federal court. Finally, we note that "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 739, 19 L.Ed.2d 936, 946 (1968), underlying such devices as joinder of necessary parties and pendent jurisdiction, supports allowing an attorney to appeal when he is truly the interested party.

 Accordingly, we join three other circuits in holding that attorneys may appeal from a denial of attorney's fees to their client. *See Dietrich Corp. v. King Resources Co.*, 596 F.2d 422 (10th Cir. 1979); *Preston v. United States*, 284 F.2d 514 (9th Cir. 1960); *Angoff v. Goldfine*, 270 F.2d 185 (1st Cir. 1959); 9 Moore's Federal Practice ¶ 203.06 at 3–23 (2d ed. 1980). *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 485, 100 S.Ct. 745, 753, 62 L.Ed.2d 676, 686 (Rehnquist, J., dissenting).[2]

Allowing the claim to be presented does not imply that it has merit. Because this litigation has been so complex, we review its history so that the precise role played by the appellant lawyers can be understood.

In 1971, classes of black and Mexican-American voters of Dallas, Texas, filed suit against the mayor and members of the City Council of Dallas, alleging that the then-existing at-large system of electing council members unconstitutionally diluted the vote of racial minorities. Each of the two classes was represented by its own counsel.

Each sought a declaratory judgment and an injunction requiring the election of councilmen from single-member districts. The suit was dismissed for failure to state a claim upon which relief could be granted, but on appeal was remanded by this Court for further consideration. *Lipscomb v. Jonsson*, 459 F.2d 335 (5th Cir. 1972).

Following remand to the district court, all of the original Mexican-American plaintiffs were dismissed from the case for failure to respond to interrogatories. After the trial on the merits had been commenced and recessed, in 1974, the Mexican-American intervenors filed an application for intervention. The trial judge decided that their intervention at that time would serve only to delay the proceedings and would not be of assistance in resolving the issue of the constitutionality of the at-large election system. He dismissed the motion for intervention with a proviso that, if the at-large system was declared unconstitutional, the Mexican-American intervenors would be allowed to participate at the remedy stage. The attorneys who now appeal, Messrs. Hernandez and Solaris, represented the Mexican-American intervenors. Up to this time, their clients had not prevailed on any issue.

In 1975, the district court declared that the at-large election system unconstitutionally diluted the voting strength of black citizens. The Court concluded, however, that Mexican-American citizens did not suffer from dilution of their voting strength under the at-large system and, in fact, benefitted from it to a certain extent. The court also stated that an exclusive single-member district plan might tend to decrease the ability of the Mexican-American community to participate in the political life of Dallas. *Lipscomb v. Wise*, 399 F.Supp. 782, 790–793 (N.D.Tex.1975).

The City of Dallas was then afforded an opportunity to prepare an apportionment

---

**2.** If, as here, the attorneys who seek to appeal are not the counsel of record at the time fees are denied, their individual claim must, of course, be first presented to the district court in an appropriate manner. The proper procedure

to be followed in the trial court may depend on the nature of its action, whether judgment is entered on the merits or as a consent decree. *See* Rule 24, Fed.R.Civ.P.

plan to meet constitutional standards. Testimony on the merits of the City's proposal was heard beginning the week of February 4, 1975. *Lipscomb v. Wise*, 399 F.Supp. at 784. The Mexican-American intervenors, still represented by attorneys Hernandez and Solaris, participated in this remedy stage of the hearing and offered testimony as to the effect of the City's plan and the black plaintiffs' plans on Mexican-Americans. At no time did the Mexican-American intervenors present a proposed reapportionment plan. *Lipscomb, supra*, 399 F.Supp. at 791–792.

On February 8, 1975, the district court approved as constitutional the City's proposed plan which provided for eight council members to be elected from single-member districts and for the three remaining members, including the mayor, to be elected at-large.

In July, 1976, the district court denied the black plaintiffs' and the Mexican-American intervenors' motions for attorney's fees. It held that the black plaintiffs, however, prevailed in their suit to have the old at-large voting scheme declared constitutionally infirm, and, therefore, allowed them costs. Messrs. Hernandez and Solaris continued to represent the Mexican-American intervenors. The black plaintiffs appealed from the district court's July 24, 1976, attorney's fee order; the Mexican-American intervenors did not.

This court reversed and remanded the district court's decision, holding the reapportionment plan to be a judicial one and requiring single member districts. *Lipscomb v. Wise*, 551 F.2d 1043 (5th Cir. 1977). Messrs. Hernandez and Solaris represented the intervenors before the Fifth Circuit on the appeal. After the City filed a petition for writ of certiorari, the Mexican-American Legal Defense Fund, Inc. (MALDEF) began its representation of the intervenors. So far as we can ascertain, Hernandez and Solaris rendered no further services. The Supreme Court reversed this court's decision and held that the "eight-three" ordinance approved by the Dallas City Council

was a "legislative plan" to be judged under constitutional standards, rather than a "judicial plan" subject to the stricter standard requiring single-member districts in the absence of special circumstances.

After the conclusion of the district court trial, Texas became subject to the requirements of Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.[3] The Supreme Court held that the effect of this change was an issue properly to be considered by the Fifth Circuit on remand. *Wise v. Lipscomb*, 437 U.S. 535, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978).

We remanded the case to the district court for review of the issue of the City's compliance with the Voting Rights Act of 1965 and other appropriate relief, including the matter of attorney's fees. *Lipscomb v. Wise*, 583 F.2d 212 (5th Cir. 1978). The black plaintiffs then filed a motion for attorney's fees. The district court set a hearing on the plaintiffs' claims for attorney's fees for July 26, 1979. The day before the scheduled hearing the Mexican-American intervenors represented by MALDEF also filed a motion for attorney's fees.

The district court found that the Mexican-American intervenors were not "prevailing parties" for purposes of an award of attorney's fees relating to their participation in any of the district court's proceedings. It did allow attorney's fees to the lawyers employed by MALDEF for their work on appeal in support of Voting Rights Act issues.

Messrs. Hernandez and Solaris filed a motion to amend this judgment on February 11, 1980, contending that they had served as attorneys for the intervenors during the trial and early appellate stages of the case but had received no notice from the court concerning the August 26, 1979, hearing for attorney's fees. An evidentiary hearing was scheduled for July 11, 1980, but the court removed that proceeding from its docket by an order stating that notice to the Mexican-American intervenors had been provided to the MALDEF attorneys,

---

**3.** *See* Pub.L.No.94–73, Title II, §§ 204, 206, Title IV, § 405, 89 Stat. 402, 404 (1975).

who had represented the Mexican-American intervenors before the Supreme Court and in the subsequent Voting Rights Act proceedings. The court noted that the motion to amend judgment did not dispute the fact of notice to the intervenors, and further held that it is the right of the party, not the party's attorneys, to recover attorney's fees and that Hernandez and Solaris had no derivative right to proceed directly against defendants on their behalf.

There was no denial of due process in the district court's failure to hold an evidentiary hearing. It had knowledge of all the relevant facts and notice was given to the counsel then enrolled for the intervenors. There is no contention on appeal that Hernandez and Solaris could have presented new evidence, not already of record, that would have affected the outcome of the suit.

Hernandez and Solaris represented the intervenors only at those stages of the proceedings and on those issues on which they were unsuccessful. They do not now contend otherwise: instead their claim is that they were successful in obtaining the right to intervene. It is success in result that determines the right to counsel's fees; *Doe v. Marshall*, 622 F.2d 118 (5th Cir. 1980); *Iranian Students Ass'n v. Edwards*, 604 F.2d 352 (5th Cir. 1979); though that success may be obtained in some manner other than by judgment on the record. *See Doe v. Marshall, supra; Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980). The attorneys also argue that they "played a role" in the result. However, there was substantial basis for the district court's conclusion that the sole success of the intervenors came as a result of MALDEF's counsel and advocacy. While Hernandez and Solaris kept the intervenors' case alive, MALDEF achieved success on their behalf. We are not able to say that the district judge was in error in concluding that, for this alone, Hernandez and Solaris were not due fees.

AFFIRMED.