UNITED STATES of America, ex rel.
Peter Jensen THORNTON,
Plaintiff,

v.

SCIENCE APPLICATIONS INTER-
NATIONAL CORPORATION,
et al., Defendants.

No. 3:94–CV–0749–T.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 17, 1998.

Lloyd Rex Crosswhite, U.S. Army Corps of Engineers, Fort Worth, TX, Thelma Quince Colbert, U.S. Attorney's Office, Fort Worth, TX, Michael F. Hertz, Polly A. Dammann, Carolyn G. Mark, U.S. Dept. of Justice, Civ. Div., Washington, DC, for U.S. ex rel. Thornton.

Lawrence T. Bowman, Cozen & O'Connor, Dallas, TX, F. Paul Bland, Jr., Trial Lawyers for Public Justice, Washington, DC, for Peter Jensen Thornton.

Peter Jensen Thornton, Dallas, TX, pro se.

William R. Stoughton, McKenna & Cuneo, Dallas, TX, Alan I. Baron, Foley Hoag & Eliot, Washington, DC, for Science Applications Intern. Corp.

Jeffrey Scott Levinger, Carrington Coleman Sloman & Blumenthal, Dallas, TX, Roger M. Witten, Stephen F. Black, Wilmer Cutler & Pickering, Washington, DC, for Bendix Field Engineering Corp.

Thomas W. Mills, Jr., Mills Presby & Associates, Dallas, TX, pro se.

## ORDER AWARDING STATUTORY SHARE OF SETTLEMENT AND DENYING REQUEST FOR ATTORNEYS' FEES

MALONEY, District Judge.

Before the Court is Relator's Brief in Support of Statutory Share of Settlement and Recovery of Reasonable Attorneys' Fees and Litigation Expenses. The Government and Defendants filed briefs in opposition, and Relator has filed a response to Defendants' brief. The Court now considers the brief and the responses.

Relator Peter Jensen Thornton filed this suit under the *qui tam* provision of the False Claims Act, 31 U.S.C. § 3730(b), alleging misconduct on the part of private subcontractors in connection with the installation of the security system for the Western Currency Production Facility (the Facility) in Fort Worth, Texas.

The United States Department of Treasury, Bureau of Engraving and Printing, engaged the United States Army Corps of Engineers to build the Facility. The Bureau of Engraving uses the Facility to print currency. Also, the Facility houses a federal reserve vault, a plate vault, and plate-making equipment.

Defendant Science Applications International Corporation contracted with the Army Corps of Engineers to design, install, and test a state-of-the-art security system for the Facility.

Defendant Bendix Field Engineering Corporation, a Division of Allied Signal Aerospace Company, contracted with Science Applications as the first-tier subcontractor to install the electrical and electronic components for the security system.

Defendant Lloyd Electric Company, Inc., is the successor-in-interest to J.V. Clark Electric Company, Inc. Bendix engaged J.V. Electric as the second-tier subcontractor to install conduit, wire, and cabling at the Facility.

On April 19, 1994, Thornton, formerly a quality control inspector for Science Applications, filed this suit alleging that Defendants defrauded the United States and the taxpayers by submitting false claims to the Government with respect to their performance of the contract. Principally, Thornton alleges Defendants obtained performance payments by submitting false claims for uncompleted work and false reports of system tests. Also, he alleges Defendants concealed important facts about materials and labor expended on the project, falsely reported that project materials complied with contract requirements, misrepresented the project's compliance with the Buy American Act, and either overcharged for labor or charged for unnecessary labor.

On April 24, 1995, the Government intervened in the suit. *See* 31 U.S.C. § 3730(c)(4). The Government investigated Thornton's allegations and determined that some of them had merit. Specifically, the Government found that Science Applications and its subcontractors wrongfully billed for testing required under the contract, which, in fact, was never performed.

The Government and Defendants reached a settlement to which relator objected. Nevertheless, the Court approved the settlement on August 15, 1997. On August 25, 1997, the parties filed copies of the settlement agreement between the Government and Defendants.[1]

Pursuant to this Court's order, Relator, through attorney Rogge Dunn, filed the instant brief in support of Relator's share of the settlement proceeds. Additionally,

---

1. There were actually three settlement agreements. There was a separate agreement reached between the government and each of the three defendants. The agreements were similar and contained almost identical language except for minor changes that were specific to each defendant. The differences are immaterial in the Court's analysis, and the Court refers to the agreements collectively as the settlement agreement.

Dunn's brief supports awarding Relator attorneys' fees and costs.

**False Claims Act *qui tam* Provisions**

Congress enacted the False Claims Act in 1863 as a tool to combat fraud against the Government. *See United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 745–46 (9th Cir.1993). The Act has particular applicability in the context of government contracting. *See* William E. Kovacic, *Whistleblower Bounty Lawsuits as Monitoring Devices in Government Contracting,* 29 Loy.L.A.L.Rev. 1799 (1996). The Act authorizes both the Attorney General and private citizens to bring civil actions for violations of § 3729 of the Act. *See id.* § 3730(a), (b). In 1986, Congress amended the Act to increase the financial and other incentives for private individuals to bring suit under the Act. *See Boeing,* 9 F.3d at 745; S.Rep. No. 99–345, at 23–24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288–89.

If the Government elects to proceed with the suit, it has the primary responsibility for prosecuting it and is not bound by an act of the person who first filed it. *See* 31 U.S.C. § 3730(c)(1). However, the person who first filed the suit may remain a party to it, subject to certain conditions. *See id.* The Government may settle the suit, notwithstanding the objection of the person initiating it, if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. *See id.* § 3730(c)(2)(B).

If the court determines that the settlement is fair, adequate, and reasonable, the settlement is accepted, and the *qui tam* plaintiff is entitled to receive a share of the settlement proceeds. The *qui tam* plaintiff's share should not be below 15%, nor above 25%. *See* 31 U.S.C. § 3730(d)(1).

Not surprisingly, Relator and the Government disagree as to the appropriate percentage Relator is entitled to in this action. Furthermore, they do not agree as to what constitutes "proceeds" within the meaning of the statute. Before addressing Relator's percentage, therefore, the Court must determine what constitutes the settlement proceeds in this action.

**Settlement Proceeds**

It is not in dispute that the settlement agreement that the Government entered into with Defendants generally consisted of three parts. The Government received a total of $230,000 in cash, Defendants waived certain claims against the Army Corp of Engineers, and the Government received access to the source code for the software provided to the Government under the contract between Science Applications and the Government. Relator contends that all three components are proceeds, and that he is entitled to a share of all three. The Government argues that Relator is only entitled to a share of the cash.

■ The False Claims Act does not define proceeds. The Court therefore looks to the plain meaning of the word. *See e.g. Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (citations omitted). Regarding proceeds, Black's Law Dictionary states in part, "Proceeds does not necessarily mean only cash or money.... That which results, proceeds, or accrues from some possession or transaction." BLACK'S LAW DICTIONARY 1204 (6th ed.1990). The United States Supreme Court also noted long ago that proceeds are not necessarily money, and that it is a word of great generality. *See Phelps v. Harris,* 101 U.S. 370, 380, 25 L.Ed. 855 (1879). Based on the above definition, the Court concludes that the claims abandoned by Defendants are part of the proceeds of the settlement.

The Court's conclusion is also supported by the settlement agreement itself. In the Court's order of August 15, 1997, it approved the proposed settlement agreement on the condition that the parties submit the agreement to the Court. Based on that order, the Government submitted the settlement agreement for the Court to re-

view. The agreement provides that one of the conditions demanded by the Government and agreed to by Defendants is that each defendant "waives, releases, and promises to refrain from instituting, maintaining, or causing to be instituted or maintained any action, claim, or adjustment against the Government which it has or may have as a result of its performance under the Contract." (Notice of Filing of Settlement Agreements Ex. 1, 2, and 3.) The language of the settlement agreements supports the Court's conclusion that the claims released by Defendants are part of the proceeds received by the Government.

The Court's conclusion is also supported by the representations made to the Court. The Government submitted the settlement agreements to the Court, and in supporting the proposed settlement agreement, Defendants stated that release of the claims was a significant part of the settlement.

The Government states that even if the claims are part of the proceeds, their value is undetermined. Defendants represented to the Court that the value of the claims is $1.6 million. (Allied Signal Technical Services Corp. Reply to Relator's Objection to Proposed Settlement at 2.) The Government argues that the Court cannot rely on $1.6 million as an accurate figure because that is only what Defendants were claiming against the Government, and not necessarily what the value of the claims is. The Government argues, in essence, that the claims cannot be part of the proceeds because the value is unknown. As explained below, the Court is of the opinion that it can consider the claims as part of the proceeds without knowing the exact value.

Based on the plain meaning of the word "proceeds," the terms of the settlement agreement, and the representations of the parties, the Court concludes that the claims released by Defendants are included in the proceeds of the settlement.

■ Relator also argues that the value of the source code, whatever that value might be, should also be included in the proceeds. When collateral issues that are only incidental to the *qui tam* action are settled, they should not be considered when determining the Relator's share of the proceeds. *See United States ex. rel. Burr v. Blue Cross & Blue Shield of Fla., Inc.,* 882 F.Supp. 166, 169 (M.D.Fla.1995).

■ Here, the United States contends that the original contract between it and Science Applications called for Science Applications to turn over the source code to the Government, and that the provision turning over the source code was included in the settlement agreement only to avoid future confusion. After review, the Court agrees that including the provision to turn over the source code was only incidental to the *qui tam* action, and it should not be included in determining Relator's share of the settlement proceeds.

In sum, the Court concludes that the $230,000 cash and the claims abandoned by Defendants should be included as the proceeds of the settlement. The value of the source code, however, is not included.

**Relator's Percentage of Proceeds**

A *qui tam* plaintiff should receive between 15% and 20% of the proceeds, depending on how much the person substantially contributed to the prosecution of the claim. *See* 31 U.S.C. § 3730(d)(1). The statute gives no guidance on the appropriate percentage other than it must relate to the person's contribution. Furthermore, there is little case law that exists to guide the Court in determining the appropriate percentage.

■ Here, the Government admits that Relator provided helpful information about false claims submitted for payment. Furthermore, the Court notes that Relator spent a great deal of time and effort in documenting what he believed to be the fraud committed by Defendants upon the United States. Additionally, the Court realizes that Relator has been put through

considerable personal and professional hardship in pursuing this action. As Relator's attorney points out, Relator spent four years investigating the fraud, and in the process he reviewed thousands of documents and prepared chronologies and summaries of the information he reviewed. Additionally, Relator was terminated from his employment with Science Applications. In considering the percentage Relator is entitled to, the Court may also considers these hardships. *See Burr*, 882 F.Supp. at 169. Considering the assistance Relator provided, and the hardships Relator suffered in pursuing this action, the Court concludes that he is entitled to between 20% and 25% of the proceeds.

## Amount of Relator's Share

The Government contends that the value of Defendants' abandoned claims is not necessarily $1.6 million. The Government does not suggest what the value is, but only that the Court cannot rely on Defendants' representation of the value. The Government also argues that it could not comply with an order of the Court awarding more that the amount of cash proceeds to Relator because Congress has not appropriated funds for that purpose.

The Court concludes that Relator is entitled to the $230,000 cash that the Government received in the settlement. Even if the abandoned claims are worth only half of what Defendants represented to the Court, Relator's recovery amounts to just over 22% of the proceeds.[2] This percentage falls within the range of what this Court believes Relator should recover.

## Attorneys' Fees

■ Finally, Relator's attorney moves for attorneys' fees and expenses. The False Claims Act allows a relator to recover reasonable expenses, plus reasonable attorneys' fees and costs. *See* 31 U.S.C. § 3730(d)(1). The Act, however, provides that the Relator, and not his attorney, has standing to seek attorneys' fees. *See United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip.*, 89 F.3d 574, 578–79 (9th Cir.1996), *cert. denied* 519 U.S. 1109, 117 S.Ct. 945, 136 L.Ed.2d 834 (1996). As the Ninth Circuit Court of Appeals stated, "[T]he attorney remains at the mercy of the client, who can either demand attorneys' fees from the defendant, or not, as he chooses. If the client chooses not to ask for the fees, the attorney has no standing to request them." *Id.* at 577. This Court agrees that only Relator has standing to request attorneys' fees.

Here, Dunn notes that the Court would not let him withdraw from representing Relator before the brief was filed. That, however, makes no difference. Assuming Dunn represented Relator from the beginning of this lawsuit to the filing of the brief in support of Relator's share of the proceeds, Dunn would still be at the mercy of Relator. Relator has specifically requested that the Court not allow Dunn to represent him. Implicit in Relator's request is that he did not request attorneys' fees. The Court understands that it could possibly have been to Relator's benefit to request attorneys' fees,[3] but the decision of whether to request the fees is Relator's, not the Court's. The Court concludes that under the act, Relator's attorneys lack standing to seek attorneys' fees and costs.

It is therefore **ORDERED** that Relator's statutory share of the settlement proceeds amounts to $230,000, as provided above.

---

2. Half of $1.6 million is $800,000. That amount added to the $230,000 cash is $1,030,000. Relator receiving $230,000 is approximately 22.33% of $1,030,000.

3. Dunn points out that under the fee agreement with Relator, the attorneys are to receive a total of 40% of the total amount recovered plus expenses, or the attorneys' fees awarded by the Court, whichever the attorneys choose. Relator's amount, after attorneys' fees and cost, would be increased by any award of attorneys' fees by the Court. The enforcement of the fee agreement is a matter for another forum.

It is **FURTHER ORDERED** that Relator's attorneys' request for fees and costs is **denied** for lack of standing to seek such fees.