RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0490p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TINA MARIE GONTER; CHARLES WILLIAM GONTER, bringing this action on behalf of the United States of America, as relators,

Plaintiffs-Appellants (06-4184)/
Cross-Appellees,

UNITED STATES OF AMERICA,

Interested Party,

v.

HUNT VALVE COMPANY, INC., et al.,

Defendants,

GENERAL DYNAMICS, MARINE SYSTEMS DIVISION, ELECTRIC BOAT,

Defendant-Appellee/
Cross-Appellant (06-4256),

NORTHRUP GRUMMAN NEWPORT NEWS, formerly known as Newport News Shipbuilding,

Defendant-Appellee/
Cross-Appellant (06-4266).

Nos. 06-4184/4256/4266

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 01-00634—Dan A. Polster, District Judge.

Argued: October 24, 2007

Decided and Filed: December 18, 2007

Before: MERRITT and CLAY, Circuit Judges; COX, District Judge.[*]

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**COUNSEL**

———————————

**ARGUED:** James B. Helmer, Jr., HELMER, MARTINS, RICE & POPHAM, Cincinnati, Ohio, for Appellants. Michael L. Waldman, ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER, Washington, D.C., for Appellees. **ON BRIEF:** James B. Helmer, Jr., Robert M. Rice, HELMER, MARTINS, RICE & POPHAM, Cincinnati, Ohio, for Appellants. Michael L. Waldman, ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER, Washington, D.C., Kali N. Bracey, JENNER & BLOCK, Washington, D.C., Charles B. Sklarsky, JENNER & BLOCK, Chicago, Illinois, for Appellees.

———————————

**OPINION**

———————————

**I.**

MERRITT, Circuit Judge. This appeal, arising from a dispute between a law firm that represented *qui tam* plaintiffs and the defendant shipbuilders, raises the issue of whether the district court exceeded its discretion in awarding attorneys' fees of $1,749,245 under the False Claims Act. The Plaintiff, a Cincinnati law firm, contends that the amount was unjustifiably low, while the Defendants urge this Court in a cross-appeal to find the lower court's award excessive. Two additional issues are before us: first, the Defendants challenge the Plaintiff's standing to bring this suit; and second, the Plaintiff argues that portions of the Defendants' reply brief for the cross-appeal contravene Fed. R. App. P. 28.1(c)(4).

The Plaintiff has standing to appeal the lower court's decision, while the Plaintiff's motion to strike portions of the reply brief is denied for failing to show prejudice. Turning to the substantive issues raised by both parties, we hold that, with the exception of the exclusion of fees related to the fee litigation, the district court's calculation of attorneys' fees falls within the broad discretion afforded under the statutory scheme. Consequently, with the exception of its ruling on the fee litigation issue, the district court's decision is AFFIRMED.

**II.**

The law firm of Helmer, Martins, Rice & Popham Co., L.P.A. ("HMRP") represented Relators Tina and William Gonter from 2001 until March 25, 2005, in an investigation of faulty valves produced by Hunt Valve Company for use in submarines and ships built for the U.S. Navy by Northrop Grunman Newport News and General Dynamics Electric Boat (collectively "Shipbuilders"). In March 2001, the Relators filed a False Claims Act ("FCA") action against Hunt Valve Company and the Shipbuilders. The Department of Justice intervened in the Hunt Valve case – its prerogative under the FCA – and ultimately announced a $666,000 settlement with the company in the spring of 2005. This settlement resulted from a collaboration between the Department of Justice and the private attorneys representing the Relators. The Department of Justice did not, however, choose to intervene in the suit against the Shipbuilders, which allowed the Relators to prosecute the case as *qui tam* plaintiffs on the taxpayers' behalf.

In January 2005, two attorneys, Frederick Morgan and Jennifer Verkamp, and one paralegal, Mary Jones, left HMPR to join another firm, Volkema, Thomas, Miller, Scott & Merry L.P.A. ("Volkema"). Because Morgan and Verkamp had spearheaded the work on the FCA claims, the Relators chose to conclude HMRP's representation in March 2005 and continue with Volkema.

That fall, the Relators – represented by Volkema – reached a $12.5 million settlement with the Shipbuilders, the details of which were finalized in March 2006.

On December 23, 2005, HMRP filed a motion for an award of attorneys' fees and expenses for the considerable work it performed from 2001 until early 2005 in preparing and settling the FCA claims against both Hunt Valve and the Shipbuilders. The district court denied the initial petition on two grounds: first, the request was premature, and second, the FCA statute only permits Relators to file attorneys' fee petitions. Shortly thereafter, the Relators – acting through Volkema – filed another petition on behalf of HMRP for attorneys' fees and expenses. In the petition, HMRP sought $2,758,748.12 in attorneys' fees[1] and $124,498.29 in reimbursable expenses, for a total of $2,883,246.41. The Shipbuilders allowed that they owed fees and expenses, but argued that the amount should total $1,110,789.85, representing $1,019,953.71 in attorneys' fees and $90,836.14 in expenses. After considering the evidence offered by both parties, the district court ultimately awarded HMRP fees of $1,749,245.80 and expenses of $122,500.60, for a total amount of $1,871,746.40.

In this appeal, the Plaintiff, HMRP, argues that the district court abused its discretion in the following three ways: (1) by using allegedly unsubstantiated 2004 billing rates instead of current, 2005 rates; (2) by refusing to award attorneys' fees for litigation related to the fee petition itself; and (3) by refusing to enhance the award by 25% for "exceptional" results. The defendant Shipbuilders filed a cross-appeal, contending that the district court failed to exercise appropriate discretion in calculating the number of hours billed by the defendants; specifically, they fault the lower court for including – without sufficient explanation – hours in the lodestar valuation that were allegedly duplicative, unrelated to the litigation, or wasteful.

### III. Jurisdiction over the appeal

The district court exercised subject matter jurisdiction over the federal question involved in this case – namely, the False Claims Act. *See* 31 U.S.C. § 3732(a). Appellate jurisdiction exists under 28 U.S.C. § 1291, as the district court issued a final order in this case. The Shipbuilders contend, however, that only the Relators could bring this appeal and that the case should thus be dismissed because HMRP is an improper party. For the reasons discussed below, the Plaintiff does have standing to proceed.

The False Claims Act, 31 U.S.C. § 3730(d), provides for fee-shifting and includes both attorneys' fees and expenses as part of the award to a successful *qui tam* plaintiff. The FCA reads in relevant part: "Such person [*qui tam* plaintiff] shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(2). Notably, "only the plaintiff has the power to demand that the defendant pay the fees of the plaintiff's attorney" under the FCA; without such a demand, the defendant is under no obligation to pay. *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip.*, 89 F.3d 574, 578 (9th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). "Once the power is exercised, however, the attorneys' right vests, and the defendant's duty becomes fixed." *Id.* at 578. Because the Relators, through a motion filed by Volkema, did seek attorneys' fees on behalf of HMRP, the Defendants' duty to pay such fees vested.

The Defendants point to several instances where courts have denied requests for attorneys' fees to support their argument. But in each of the cases the Defendants cite, the court refused

---

[1]The fee value comprises a lodestar amount of $2,221,509.75 ($2,148,953.50 for work done prior to December 15, 2005, and an additional $72,556.25 for work preparing and litigating the fee petition) plus a 25% enhancement for work performed before December 15, 2005.

attorneys' fees because the Relators never sought them. *See*, *e.g.*, *United States ex rel. Thornton v. Science Applications Int'l Corp.*, 79 F. Supp. 2d 655, 659 (N.D. Tex. 1988) (noting that because the Relators did not request attorneys' fees, their counsel lacked standing). These cases are thus inapposite to our case, where the Relators filed a fee petition on behalf of the Plaintiff. Moreover, the cases do not address the question before us regarding standing on appeal, but instead discuss the ability to recover an award in district court.

Whether HMRP has standing to appeal the district court's ruling is an issue of first impression in the Sixth Circuit. Other circuits have addresses this issue, but have reached different results. *Compare Mathur v. Board of Trustees of Southern Illinois University*, 317 F.3d 738 (7th Cir. 2003) (finding standing), *and Lipscomb v. Wise,* 643 F.3d 319 (5th Cir. 1981) (finding standing), *with Willis v. Government Accountability Office*, 448 F.3d 1341, 1349 n.7 (Fed. Cir. 2006) (denying standing). In *Mathur*, a case involving the 1964 Civil Rights Act, the plaintiff employee won a discrimination suit against a university that included an award of attorneys' fees. The attorneys – and not the plaintiff – appealed the district court's choice of rates in determining the award. While the Seventh Circuit noted that the right to fees belonged to the "prevailing party" and not his counsel, it did not find that this fact precluded counsel from having standing. *Mathur*, 317 F.3d at 741; *see also Devlin v. Scardaletti*, 536 U.S. 1, 7 (2002) (the Supreme Court has "never restricted the right to appeal to named parties to the litigation"). Instead, the Seventh Circuit applied the following reasoning in determining that Mathur's attorneys did have standing to appeal the award:

> Since an attorneys' fee award is considered part of the costs of litigation . . . the award goes straight from the plaintiff to counsel and is *not intended to serve as additional compensation for plaintiffs*. This means that 'the question whether the motion for fees is in the name of the party or his attorney is a technicality,' because 'it would exalt form over substance to deny the motion for fees' if an attorney, and not the plaintiff, is the named party.

*Mathur*, 317 F.3d at 741 *(quoting Lawrence v. Hacker*, 966 F.2d 1153 (7th Cir. 1992) (emphasis added). The Fifth Circuit addressed a similar question in *Lipscomb v. Wise,* 643 F.2d 319 (5th Cir. 1981). There, several attorneys involved in a class action lawsuit appealed a lower court ruling denying them standing to seek attorneys' fees. The Fifth Circuit found that the attorneys did have standing because they had alleged a "personal stake in the outcome" and would potentially "suffer an economic injury in fact." *Lipscomb*, 643 F.2d at 320 (denying the request for attorneys' fees on other grounds).

The Federal Circuit reached a different result in *Willis v. Government Accountability Office*, where, again, an attorney – and not the "prevailing party" (i.e., plaintiff) – appealed a GAO decision denying additional attorneys' fees under 5 U.S.C.S. § 7701(g). The *Willis* Court held that because the plaintiff did not file the appeal, the attorney lacked standing. 448 F.3d at 1346. Notably, however, the plaintiff in *Willis* specifically refused to request the entire amount of fees sought by the attorney when he filed the initial petition seeking fees. *Id.* at 1342-43. *Willis* is thus distinguishable from the instant case where the Relators' fee petition did include the entire amount sought by HMRP. Consequently, in our case, but not in *Willis*, the right to larger amount vested in counsel.

The Fifth and Seventh Circuits' treatment of the issue is persuasive. As an initial observation, both the Relators and Volkema had fully resolved their FCA claims to contingency fees and attorneys' fees, respectively, prior to this appeal; consequently, as in *Mathur*, the district court's ruling – and any additional award – would only affect HMRP's interests. *See also Lipscomb,* 643 F.2d at 320 ("[A]s a practical matter, the lawyer is frequently the only person adversely affected when attorney's fees are denied."). Because the district court awarded HMRP fees lower than the amount sought in the petition, the firm has suffered a putative injury in fact. Additionally, unlike

the situation in *Willis*, the Relators in the instant case did implicitly approve the entire amount sought by HMRP when it filed the original fee petition for the full amount. To refuse standing, therefore, would be to tantamount to "exalt[ing] form over substance." *Mathur*, 317 F.3d at 741. An alternate holding would, moreover, potentially jeopardize the availability of sufficiently "reasonable" fees to attract competent representation and, by extension, the ability to vindicate the goals of the FCA. *See* S. Rep.No. 99-345, 99th Cong., 2d Sess. 23-23 (1986) ("The Committee's intent in amending the *qui tam* section of the False Claims Act is to encourage more private enforcement suits."). Consequently, in concluding that HMRP does have standing to bring this appeal, we reiterate our earlier observation that "[w]hen they are the real parties in interest, attorneys are entitled to their day in court." *Price v. Pelka*, 690 F.2d 98, 102 n.3 (6th Cir. 1982) (*quoting Lipscomb*, 643 F.2d at 320).

## IV. Calculation of fee award

### *Standard of review*

The district court's award of $1,871,746.40 in attorneys' fees and expenses covered work performed by HMRP over a four-year period. In seeking additional fees, the Plaintiff argues that the district court should have applied the firm's then-current, 2005 rates instead of allegedly unsubstantiated "historic" rates from 2004. Additionally, the Plaintiff urges this Court to find that the district court's refusal to include fee-related litigation in the award and to apply a 25% enhancement for "exceptional success" constituted abuses of discretion. Conversely, the Shipbuilders contend that numerous hours submitted for compensation were either unrelated to the underlying FCA claim, duplicative, or wasteful, and that the district court exceeded its discretion by failing to adequately address these issues.

This Court reviews a district court's award of attorneys' fees and expenses for abuse of discretion. *Geier v. Sundquist*, 372 F.3d 784, 789 (6th Cir. 2004) (*citing Perotti v. Seiter*, 935 F.2d 761, 763 (6th Cir. 1991). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

### *"Reasonable" fees*

In an attorneys' fee case, the primary concern is that the fee awarded be "reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 893 (1984)). A reasonable fee is "*adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.*" *Geier*, 372 F.3d at 791 (emphasis added); *see also Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) ("[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question."). The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The district court's calculation of the lodestar value, as well as any justifiable upward or downward departures,[2] deserves substantial deference, but only when the court provides "a clear and concise explanation of its reasons for the fee award." *Eckerhart*, 461 U.S. at 438; *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).

HMRP objects to the lower court's use of 2004 billing rates in three ways. First, the firm contends that the district court's award applied a twenty percent reduction that was unsupported by the evidence in the case. Second, the firm suggests that the district court erred as a matter of law

---

[2]See part IV, *infra*, for a discussion of the 12-factor test for enhancements and reductions elaborated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

by using 2004 rates instead of the current, 2005 billing rates. And third, the Plaintiff argues that the 2004 rates used by the district court were unsubstantiated and thus based on clearly erroneous findings of fact.

To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work. *Reed*, 179 F.3d at 472 (*citing Webb v. County Bd. of Educ.*, 471 U.S. 234, 242 (1985)). In the instant case, the Plaintiff submitted considerable evidence – based on its 2005 billing rates – supporting its claim for a lodestar amount of $2,221,509. The district court reasoned, however, that to award such an amount would be tantamount to a "windfall" for counsel, as the bulk of the legal work occurred from 2001-2003.[3] Dist. Ct. Op. at 4-5. At the same time, the court noted that in order to ensure adequate compensation for the Plaintiff it "would compensate [HMRP] for waiting several years for payment, by awarding [] 2004 rates for the work done in 2001, 2002, and 2003." *Id.* at 5. The court then applied the 2004 rate to the number of hours, 8600, supported by HMRP's fee petition.[4] Having provided a "clear and concise" explanation for its fee award, the lower court did not exceed its discretion; in fact, the district court appropriately balanced the twin goals of ensuring adequate compensation for counsel who take on FCA cases and preventing a windfall for lawyers.

The decision to apply historic, 2004 rates was similarly within the district court's discretion. We have occasionally approved the application of current billing rates when doing so was appropriate in reaching a reasonable fee. *See*, *e.g.*, *Barnes v. City of Cincinnati*, 401 F. 3d 729, 745 (6th Cir. 2005) (finding the current market rates reasonable because the litigation "had been ongoing for nearly six years"); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F. Supp. 953, 958 (6th Cir. 1988) (noting that current rates were appropriate to counterbalance a delay in payment) (reversed on other grounds). But *Barnes* does not stand for the proposition that this Court mandates – or even prefers – application of current rates; rather, as the *Barnes* Court itself stated, the application of current rates was "within the contemplation of the attorneys fees statute." 401 F.3d at 745; *see also Louisville Black Police Officers Organization, Inc. v. Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("[W]e reiterate today that the district courts retain their discretion in such matters constrained only by their duty to achieve the goal enunciated in *Northcross*: to make an award of fees which is 'adequate to attract competent counsel, but which does not produce windfalls to attorneys.'") (citing *Northcross*, 611 F.2d at 633). Accordingly, the district court has the discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees. Here, the district court appropriately justified how its award balanced the competing goals at issue in calculating reasonable fees: "The Court believes that while HMRP is entitled to some adjustments for waiting several years for compensation, the use of current rates would produce a windfall." Dist. Ct. Op. at 4-5.

And finally, the district court did not abuse its discretion in determining the 2004 rates, which it then used in the lodestar calculation. As we described in *Geier v. Sundquist*, "[t]o arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." 372 F.3d at 791 (citing *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation. *See Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 Fed. Appx. 498 (6th Cir. 2006) ("Even if it would be reasonable to award [plaintiff] $370 per hour, the record supports the

---

[3]In fact, more than 50% of the 8600 billable hours occurred in 2001 and 2002.

[4]The district court did apply current rates to the work on HMRP's fee petition, as that work began on December 15, 2005. This decision reflects the careful consideration that the district court gave to its decisions.

district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation."); *see also Auto Alliance v. U.S. Customs Service*, 155 Fed. Appx. 226, 228 (6th Cir. 2005) (awarding a $ 200 per hour flat rate in the eastern district of Michigan where the lead attorney's billing rate was $ 400 per hour).

HMRP submitted evidence with its fee petition showing that Mr. Morgan and Ms. Verkamp were compensated at $425 and $340, respectively, in 2005. As noted above, however, these data are not controlling, as the district court reasonably decided to use 2004 rates. To support their argument for lower rates, the Shipbuilders provided an affidavit submitted by HMRP in a 2002 case that included the firm's 2001 rates.[5] *See Pepsico, Inc. v. Central Investment Corp.*, No.C-1-98-389 (S.D. Ohio 2002). More importantly, the Shipbuilders cited a district court order from the U.S. District Court in the District of Columbia where HMRP – in a motion uncontested by the opposing party – claimed that its 2004 rates for Morgan and Verkamp were $375 and $275, respectively. *See United States ex rel. Pogue v. Diabetes Treatment Centers of America*, Civ. No. 99-3298 (D.D.C. May 17, 2004). Relying on *Pogue*, the district court concluded that the billings rates in 2004 were $375 and $255 for the same two lawyers and noted that these rates were 88% and 75%, respectively, of the amount sought in the fee petition.[6] By applying these rates, the district court effectively reduced the lodestar by twenty percent. The district court's treatment in the instant case is thus distinguishable from *Geier*, where we disapproved of the hourly rate used by the lower court because the order "contain[ed] no explanation of how . . . it accounted for [Plaintiff's] competing information concerning the prevailing market rate." *Id.* at 792. Because the district court noted that the 2004 rates were provided by HMRP in an earlier case – and that such values were sufficient to attract counsel but avoided a windfall – its choice of hourly rates was within its discretion.

The Plaintiff's contention that the district court exceeded its discretion by using an Ohio State Bar survey of paralegal rates is similarly unconvincing. HMRP argues that by relying on these data, the district court reduced Ms. Jones' salary below 2001 levels and thus committed reversible error. In *Auto Alliance Int'l Inc. v. United States Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005), however, we approved a district court's use of a state bar survey in determining a reasonable rate for compensating attorneys. In *Auto Alliance*, this Court noted that the district court's use of a flat rate of $200 per hour – slightly below the mean of $238 in the 2003 Michigan Bar survey – was "both reasonable and justified" in determining the applicable market rate. *Id.* We can think of no reason why application of the same methodology to determine the hourly rate for a paralegal would be problematic. Hence, the district court's decision to reduce Ms. Jones' rates by approximately twenty percent – which, according to the survey, still yielded a billing rate in the top ten percent for paralegals in Cincinnati – cannot be said to be an abuse of discretion.

### Defendants' cross-appeal

The "reasonable" fee analysis also controls the Shipbuilders' cross-appeal, in which they argue that the district court's failure to respond with specificity to contested billable hours constituted an abuse of discretion. The district court's order did acknowledge the Shipbuilder's evidence in opposition to the number of hours used in the lodestar valuation – noting that some

---

[5] The rates were $295/hour for Morgan and $210 for Verkamp. HMRP challenges this figure, arguing that they reflected discounts for a long-term client. Because the rates applied in the instant case are substantially higher than the allegedly discounted rates, this issue is not central to our holding.

[6] As a point of reference, the Ohio State Bar Association survey of 2004 hourly billing rates in the state (submitted by the Shipbuilders as an exhibit) found that the median rate for partners in firms with eight or more partners was $240/hour, while the 95th percent was $381/hour. *See 2004 Economics of Law Practice in Ohio Survey*, Ohio State Bar Assoc., Fall 2004, at 27; J. Apx. p. 663. The rates submitted by HMRP in the *Pogue* case and relied upon by the district court in the instant case comport with these values.

issues were "well-taken" – but concluded that the Plaintiff had supported its hours with affidavits and that the application of the 2004 fees achieved a fair result. Again, it is imperative to reiterate that we review a district court's calculation in light of the twin goals driving reasonableness – namely, ensuring adequate representation for *qui tam* plaintiffs and preventing a windfall for attorneys. *See Louisville Black Police Officers Organization, Inc.*, 700 F.2d at 278.

In the instant case, the Plaintiff submitted considerable evidence - more than 150 pages, in fact – supporting its claim of 8600 hours billable to the FCA actions, time which included substantial work supporting the Department of Justice in the claim against Hunt Valve. The court reviewed this evidence and, in reaching a lodestar valuation using the 2004 rates, noted that the resulting award was 80% of the lodestar requested by the Plaintiff. We have previously condoned such an across-the-board reduction. *See, e.g., Tinch v. City of Dayton*, 199 F. Supp. 2d 758, 764 (6th Cir. 2002) (citing *Meijer, Inc. v. NLRB*, 130 F.3d 1209 (6th Cir. 1997) (finding that a 25% across-the-board reduction was not an abuse of discretion). Although the district court did not engage each of the Defendants' specific arguments, it did provide a clear and concise statement that its use of 2004 rates effectively achieved the same results. We cannot say, therefore, that either the methodology or the award was an abuse of discretion.

The difficulty of determining the precise number of hours spent during trial preparation supports the district court's approach. Whereas courts can easily verify the time lawyers spend at trial and in depositions, the same is not true for trial preparation. *See Coulter v. Tennessee*, 805 F.2d 146, 150 (6th Cir. 1986) (noting that the hours spent reviewing records, speaking to other lawyers and experts, and preparing documents "cannot be fully verified"). In the instant case, all of the time that the Defendants challenge occurred during preparation for a settlement. Such a situation increases the justification for treating a trial court's decision deferentially. Otherwise, as we discussed in *Coulter*, the burden on district courts could become undue: "When the issue is a question of the lawyer's judgment in billing for a particular number of hours on a piece of work, we must depend in larger measure on the fairness of the District Court in assessing the needs of the case." *Coulter*, 805 F.2d at 152.

Equitable principles also support a decision to deny the cross-appeal, for the Shipbuilders repeatedly urge this Court to affirm the district court's other determinations, emphasizing the wide discretion enjoyed by district courts in the attorneys' fee context. Applying a more stringent standard of review only for the issues raised in the cross-appeal would, therefore, produce an unbalanced result. Regardless, the district court appropriately considered the evidence submitted by both parties in reaching an award that fairly balanced the factors at stake in determining a "reasonable fee."

## V. Fees for the fee-related litigation

In its fee petition, HMRP sought $72,556 in compensation for the preparation and resolution of the dispute over the attorneys' fee award. The district court awarded only $30,083 for work preparing the fee petition and negotiating a possible settlement of the fees, both of which took place from December 15, 2005 until June 22, 2006. The court, noting that HMRP had refused to accept an earlier offer by the Shipbuilders to pay 80% of the requested lodestar amount, refused to grant any additional fees for the period after June 22 spent litigating the fee petition.

We addressed the issue of fee-related litigation in the context of Title VII in *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987). In *Coulter*, this Court observed that "time spent in preparing, presenting, *and trying* attorney fee applications is compensable" as part of the reasonable fee. *Id.* at 151 (emphasis added). At the same time, however, we cautioned that "the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of both the civil rights case and the attorney fee case." *Id.*;

*see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (warning that a "request for attorney's fees should not result in a second major litigation"). Consequently, in the absence of unusual circumstances, the *Coulter* Court limited the compensable hours for preparing and "successfully" litigating a fee petition to three percent of the hours in the main case. *Id.* (noting that five percent would be the maximum where the main case involved a trial); *see also Auto Alliance Int'l, Inc. V. United States Customs Serv.*, 155 Fed. Appx. 226, *8 (6th Cir. 2005) (applying the 3% rule). The district court's decision to exclude altogether the time spent litigating the fee petition thus contradicts Sixth Circuit precedent.

The Shipbuilders, however, make two arguments in urging us to affirm the district court's ruling. First, they seize upon the *Coulter* Court's use of "successfully litigate" and suggest that HMRP was somehow not successful in litigating its fee petition because the award was less than the amount sought. This assertion is inaccurate, for HMRP was awarded attorneys' fees precisely because their petition was successful. The Plaintiff's contention on appeal is merely that their success was inadequately compensated. Second, and more importantly, the Defendants argue that the decision to decline attorneys' fees is within a district court's discretion when the party seeking fees declines a substantial settlement offer. In support of this argument, they point to the following language from the Seventh Circuit: "We reasoned that 'attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party' and thus may not warrant being included in the fee award as a 'reasonable attorney's fee.'" *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 743 (7th Cir. 2003) (quoting *Moriarty v. Svec*, 233 F.3d 966, 967 (7th Cir. 2000)). Notably, however, the Seventh Circuit's *Shott* decision concerned settlement offers related to the underlying case and not – as in the instant case – to the amount of attorneys' fees.

The language from our *Coulter* decision controls the issue on appeal and warrants an additional payment for litigation related to the fee issue. Although we are aware of the important goal of limiting trials-after-trials, the Seventh Circuit authority cited by the Shipbuilders is not directly on point in this case. Because *Coulter* controls this situation, we apply the three percent rule to the district court's lodestar award of $1,749,245, yielding a product of $52,477, and subtract the $30,080 already awarded for preparing the fee petition. The Defendants must, therefore, pay an additional $22,397 in attorneys' fees, with interest, to the Plaintiff.

## VI. Fee enhancements

HMRP sought a 25% enhancement of the lodestar and contends that the district court's decision not to apply the multiple constitutes an abuse of discretion. We disagree.

Fee enhancements are permissible in rare cases of "exceptional success." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). The party seeking an enhancement bears the burden of showing that such an adjustment is "necessary to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898 (1984). In the majority of cases, however, the quality of representation is "reflected in the reasonable hourly rate." *Id.* The Fifth Circuit, in an approach the Supreme Court has cited with approval, *see, e.g.*, *Hensley*, 461 U.S. at 430 n.3, enunciated twelve factors that a court may consider in determining whether a reasonable fee ought to include an augmentation. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[7]

---

[7]The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

In its argument for an enhancement, the Plaintiff points to a number of *Johnson* factors, most crucially the result obtained. Specifically, HMRP emphasizes the fact that the $12.5 million settlement with the Shipbuilders comprised over fifty percent of the yearly total for FCA actions where the Department of Justice did *not* intervene. While the district court noted that $12.5 million was a "substantial sum," it also observed that the Relators had sought $100 million in compensation and, more importantly, that Morgan and Verkamp – the attorneys most involved in the settlement – had not sought an enhancement. Consequently, the district court refused to apply an enhancement.

The considerable sum earned in the settlement does represent an important vindication of the goals underpinning the FCA. But the facts of this case – including, as the district court observed, Volkema's more obvious role in the outcome – are distinguishable from examples where courts have found "exceptional success." *See*, *e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (25% enhancement for a solo practitioner bringing a previously unrecognized cause of action); *McKenzie v. Kennickell* 875 F.2d 330, 338-39 (D.C. Cir. 1989) (awarding 25% enhancement for exceptional results where counsel "remained active in the litigation over a period of fifteen years"). The amount of the award does not, in our opinion, present the same difficulties as discovering a novel cause of action or persevering after fifteen years. Furthermore, we review the lower court's decision for an *abuse of discretion* – to find reversible error in its determination that this case was not "exceptional" would require a compelling factual situation not present here. Indeed, we are unaware of any case where a decision not to apply an enhancement was overturned as an abuse of discretion. Because the district court adequately explained why it was refusing an enhancement, we do not find the decision an abuse of discretion.

## VII.

The district court's decision is thus AFFIRMED, except for its determination that Plaintiffs were only entitled to $30,080 for the fee-related litigation. The Defendants are instructed to pay an additional $22,397, with interest from March 21, 2006, to the Plaintiffs for fees related to the fee litigation.