NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0841n.06

No. 14-3154

**FILED**

Nov 10, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

OHIO RIGHT TO LIFE SOCIETY,
INC.,

    Plaintiff-Appellant,

v.

OHIO ELECTIONS COMMISSION,
et al.,

    Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:     GUY, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Ohio Right to Life Society, Inc. appeals a January 22, 2014 Order of the United States District Court for the Southern District of Ohio (Smith, *J.*) reducing Plaintiff's requested 42 U.S.C. § 1988 attorneys' fees award. Specifically, Plaintiff contests the district court's (1) use of an hourly rate of $250 to calculate the attorneys' fees award; (2) application of an 85% across-the-board reduction to Plaintiff's requested compensable hours; (3) direction that the attorneys' fees award be paid to Plaintiff's former counsel rather than to Plaintiff itself; and (4) disallowance of requested costs and expenses without providing Plaintiff the opportunity to submit additional documentation to substantiate these expenses.

For the following reasons, we **VACATE** the district court's order awarding attorneys' fees and costs totaling $29,107, and **REMAND** the case to the district court for further

proceedings consistent with this opinion, including a recalculation of Plaintiff's attorneys' fees award.

## I. BACKGROUND

### A. The Underlying Action

The instant appeal concerns the amount of attorneys' fees and costs that the district court awarded to Plaintiff, pursuant to 42 U.S.C. § 1988, in connection with Plaintiff's action against Defendants, the Ohio Elections Commission ("OEC"), individual members of the OEC, and former Ohio Secretary of State Jennifer Brunner (collectively "Defendants"). In the underlying action, Plaintiff alleged that various Ohio campaign finance laws were unconstitutional, facially and as-applied to proposed advertisements that Plaintiff intended to run in the lead up to the 2008 and 2010 elections. The underlying action occurred in two major phases. The first occurred in 2008 and resulted in a preliminary injunction enjoining Defendants from enforcing Ohio's "blackout" provisions as-applied to certain advertisements proposed by Plaintiff in the period preceding the November 4, 2008 election. The second occurred in 2010, in the wake of *Citizens United v. Fed. Elections Comm'n,* 558 U.S. 310 (2010), and resulted in a consent decree pursuant to which the parties agreed that certain Ohio election laws were unconstitutional in light of the aforementioned Supreme Court decision.

#### 1. The 2008 Proceedings

On May 20, 2008, Plaintiff filed its initial complaint against Defendants challenging the constitutionality of various Ohio campaign finance laws and seeking both injunctive and declaratory relief. In Defendants' answer, filed on June 13, 2008, Defendants conceded that the Supreme Court's ruling in *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007) ("*WRTL*") rendered the Ohio blackout provisions challenged by Plaintiff unconstitutional as-applied to Plaintiff's proposed ads.

On June 20, 2008, Plaintiff filed a motion for a preliminary injunction raising as-applied and facial challenges to Ohio's blackout and disclosure provisions. Defendants challenged Plaintiff's standing to seek relief, arguing that because of their concession and Plaintiff's failure to take sufficient steps to produce their proposed advertisements, no recognizable controversy existed between the parties. On September 5, 2008, the district court rejected Defendants' standing arguments, finding that Defendants' concession regarding *WRTL*'s applicability to Ohio's blackout provisions did not amount "to an agreement not to enforce Ohio's blackout provisions against Plaintiff's proposed ads" and that Plaintiff had taken sufficient steps toward producing the advertisements to demonstrate injury when it filed suit. (R. 40, Opinion and Order, Page ID # 335.) The district court granted Plaintiff's motion for a preliminary injunction on the as-applied challenge to Ohio's blackout provisions and enjoined Defendants from enforcing these provisions with regards to Plaintiff's proposed advertisements. The court rejected Plaintiff's other claims.

### 2. The 2010 Proceedings

In the period between September 2008 and August 2010, Plaintiff alleges that its counsel monitored changes in First Amendment law and reviewed the briefs of the parties and numerous amicus briefs filed in *Citizens United*. In March 2010, Defendants moved to dismiss the action on the theory that there was no longer a live dispute between the parties. Plaintiff then moved to amend its complaint to add a new claim based on *Citizens United* and to allege that it intended to run broadcast advertisements during the Fall 2010 election campaign. The district court permitted Plaintiff to amend its complaint and denied as moot Defendants' motion to dismiss on the ground that the amended complaint would cure any jurisdictional deficiency. Plaintiff filed its amended complaint on August 24, 2010. Two days later, Plaintiff filed a motion for a

temporary restraining order and preliminary injunction seeking to enjoin the enforcement of Ohio's blackout and disclosure provisions.

Defendants replied to Plaintiff's motion by conceding that, given the Supreme Court's decision in *Citizens United,* Ohio could not apply some of the challenged statutes to Plaintiff's intended conduct. Following this concession, the parties entered into a consent decree on September 15, 2010 pursuant to which the parties agreed to the following: (1) Ohio's blackout provisions, Ohio Revised Code §§ 3517.1011(H) and 3517.01(B)(6), are unconstitutional to the extent that they prohibit a corporation from using its corporate treasury dollars to pay for any broadcast, cable, or satellite communication that refers to a clearly identified candidate during the thirty days preceding a primary election or a general election; and (2) Ohio Revised Code § 3599.03(A) is unconstitutional to the extent that it prohibits a corporation from using the corporation's money or property to make independent expenditures for or in aid of candidate elections in Ohio. This consent decree did not address Plaintiff's remaining claims. On September 20, 2010, following briefing by the parties on the remaining issues, the court issued its opinion and order dismissing the remaining claims for lack of jurisdiction.

## B. Application for Attorneys' Fees

Following the district court's September 2010 decision, Plaintiff filed a motion seeking approximately $352,000 in attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Plaintiff submitted eighty-eight pages of invoices to support its motion. Defendants filed a memorandum in opposition to Plaintiff's fee application asking the court to deny the motion or reduce the fees award to $35,250 and expenses to $460.

On October 22, 2013, the magistrate judge issued a forty-seven page report and recommendation regarding Plaintiff's attorneys' fees application. In the report, the magistrate

judge reduced the hourly rates requested by Plaintiff, ranging from $445 to $465, to $250 and applied a 90% across-the-board cut to Plaintiff's requested hours. Ultimately, the magistrate judge recommended that $19,520.62 in fees and costs be awarded, reducing the requested attorneys' fees award by approximately 95%.

On January 22, 2014, following Plaintiff's timely objection to the magistrate judge's report and recommendation, the district court issued an order adopting the reasoning of the magistrate judge but reducing the magnitude of the across-the-board reduction to Plaintiff's requested hours to 85%. This translates to an award of $29,107 in fees and costs or approximately 92% less than the requested attorneys' fees award. Plaintiff filed a timely appeal to this Court.

## II. DISCUSSION

### A. Reduction of Plaintiff's Attorneys' Fees Award

#### 1. Standard of Review

This Court reviews a district court's award of attorneys' fees and costs for abuse of discretion, *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001), but reviews a district court's determination that claimed hours are excessive or duplicative for clear error. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 532 (6th Cir. 1994). A district court abuses its discretion "when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Additionally, this Court may reverse a district court opinion for abuse of discretion if it is "firmly convinced that a mistake has been made." *Id.* The reviewing court, however, "cannot overturn a district court solely because it would have made a different decision under the circumstances." *Bartholomew v. Town of Collierville,* 409 F.3d 684, 686 (6th Cir. 2005) (quoting *CSX Transp., Inc. v. Tenn. State Bd. of Equalization,* 964 F.2d 548, 556 (6th Cir. 1992)). To facilitate

appellate review, the district court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### 2. Analysis

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that a trial court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).[1] This statute was enacted by Congress with the specific goal of ensuring that victims of civil rights violations will be provided "with effective access to the judicial process" because the "private market for legal services fail[s] to provide many victims" with such access. *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). Congress recognized that in order to guarantee that the "Nation's fundamental laws" are not violated with impunity, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910. Allowing a prevailing plaintiff to recover reasonable attorneys' fees is particularly important in cases, like the case at hand, where success does not translate into a large recovery that can be used to compensate an attorney. *City of Riverside,* 477 U.S. at 576. In these cases, the attorneys' fees provided under § 1988 "enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so." *Id* at 577.

A "reasonable" fee under § 1988 is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case" but does not "produce windfalls to attorneys." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citations omitted). An adjudicator's first step in identifying a "reasonable" attorney's fee is the calculation of the

---

[1] Despite § 1988's seemingly discretionary language, "in the absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Morscott, Inc. v. City of Cleveland,* 936 F.2d 271, 272 (6th Cir. 1991) (emphasis added); *see also Berger v. City of Mayfield Heights*, 265 F.3d 399, 406-07 (6th Cir. 2001).

"lodestar," which is the "proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). A trial judge may subsequently make adjustments to the lodestar in light of relevant factors.[2] *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

### i. Reduction of Hourly Rate

This Court has held that a "district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne,* 36 F.3d at 531–32. "[T]o arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter v. Hunt Valve Co*., 510 F.3d 610, 618 (6th Cir. 2007) (citations omitted). Rates awarded in other cases may provide courts with inferential evidence of the market rate. *B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008); *see Harmon v. McGinnis, Inc.,* 263 F. App'x 465, 468 (6th Cir. 2008)

---

[2] The Sixth Circuit has recognized that relevant factors to consider when adjusting the lodestar include:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed v. Rhodes*, 179 F.3d 453, 471 n.3 (6th Cir. 1999) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

("[C]ourts are permitted to, and indeed should, consider prior fee awards in determining the proper attorney's fee rate.").

Although Plaintiff requested an hourly rate ranging from $445 to $465 per hour for the work performed by Plaintiff's lead attorney, the magistrate judge selected the lower hourly rate of $250 to calculate the lodestar. In choosing this rate, the magistrate judge relied on two election law cases from the Southern District of Ohio in which requested hourly rates of $400 to $450 and $450 were reduced to $250 and $300, respectively. *Moore v. Brunner*, Nos. 2:08-cv-224 & 2:08-cv-555, 2010 WL 317017 (S.D. Ohio Jan. 25, 2010) (unpublished); *Libertarian Party of Ohio v. Brunner*, No. 2:04-cv-08, 2007 WL 4171630 (S.D. Ohio Nov. 20, 2007) (unpublished). The district court in *Moore* justified its reduction on the grounds that "the attorneys' requested hourly rates of $400 and $450 exceed the amount which would be necessary to encourage competent lawyers to undertake this representation" and that "an hourly rate of $250 is adequate to attract competent counsel within this Court's venue while avoiding producing a windfall for attorneys." *Moore*, 2010 WL 317017, at *3. The *Moore* court based its reduction on a survey of the 250 largest law firms in the country, which included the three largest firms in Ohio. The partner fee rates listed for the three Ohio firms included in the survey were $220 to $495, $225 to $490, and $200 to $475. *Id.*

Plaintiff argues that the district court erred by relying on these decisions to identify the appropriate hourly rate to use in its lodestar calculation, rather than considering other cases in which courts applied higher hourly rates. *See, e.g., Northeast Coalition for Homeless v. Brunner*, No. 2:06-cv-896, 2010 WL 4939946, at *7 (S.D. Ohio Nov. 30, 2010) (unpublished), *aff'd, Northeast Ohio Coalition for the Homeless v. Sec. of State of Ohio*, 695 F.3d 563 (6th Cir. 2012) (finding hourly rates of $400, $290, and $280 reasonable for calculating the lodestar in a §

1983 election law dispute). Plaintiff further contends that a higher rate should be used in this case because of Plaintiff's attorney's experience in the specialized field of campaign finance litigation.

While courts have approved higher hourly rates, it was within the district court's "broad discretion" to rely on the thorough analysis set forth in *Moore* to determine an appropriate hourly rate for calculating the lodestar. *Wayne*, 36 F.3d at 533. The underlying actions in *Moore* involved election law disputes during the same time frame as the instant action, and the *Moore* court based its $250 hourly rate on the hourly rates billed by law firms in the relevant geographic region. Furthermore, while the district court may take into consideration an attorney's skill level in identifying the market rate, this Circuit has consistently held that "reasonable" fees need not be "liberal" fees, and that "[s]uch fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986). Accordingly, the district court did not abuse its discretion in basing its lodestar calculations on an hourly market rate of $250.

### ii. Reduction of Requested Compensable Hours

In calculating a fee applicant's lodestar, a district court should exclude hours that were not "reasonably expended" by counsel. *Hensley v. Eckerhart*, 461 U.S. 424, 434, (1983) (quoting S. Rep. No. 94–1011, p. 6 (1976)). It is the responsibility of the prevailing party's counsel to exclude from their fee request those hours that are "excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* As it is the burden of the party seeking attorneys' fees to adequately document its hours, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. The Supreme Court has held that there is no "precise

rule or formula" in making reasonable hour determinations. *Id.* at 436. Rather, the "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Id.* at 436-37. The trial court "should not become green-eyeshade accountants" as the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). District courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations." *Id.*

In this case, the district court reduced Plaintiff's attorneys' requested compensable hours by 85%, adjusting the 90% reduction recommended by the magistrate judge while adopting the magistrate judge's rationale for the overall reduction. As determined by the magistrate judge and accepted by the district court, the reduction was based on (1) Plaintiff's limited success; (2) Plaintiff's counsel's failure to properly exercise billing judgment; and (3) Plaintiff's counsel's inadequate documentation of time expended.

Regarding Plaintiff's limited success, it is undisputed that Plaintiff is a prevailing party entitled to attorneys' fees. A prevailing plaintiff may receive fees under § 1988 even if it is not victorious on every claim. The Supreme Court has held that a district court "should compensate the plaintiff for the time [its] attorney reasonably spent in achieving the favorable outcome, even if the plaintiff failed to prevail on every contention." *Fox*, 131 S. Ct. at 2214 (quotation marks omitted). However, "[i]t is beyond peradventure that a District Court may exclude time for work on a claim on which the plaintiff did not prevail." *Hudson v. Reno,* 130 F.3d 1193, 1208 (6th Cir. 1997), *abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001). The magistrate judge found that (1) Plaintiff succeeded only on claims that were relatively straight-forward in light of recent Supreme Court precedent; (2) Plaintiff's successful

claims were largely uncontested; and (3) Plaintiff's successful claims were distinct from Plaintiff's unsuccessful claims.

With respect to Plaintiff's counsel's billing deficiencies, Supreme Court and Sixth Circuit precedent clearly permit trial courts to reduce attorneys' fees awards "[w]here the documentation of hours is inadequate." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir.1999) (quoting *Hensley*, 461 U.S. at 433). It is the responsibility of the party seeking attorneys' fees to document its entitlement to fees. This Circuit has held that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). Similarly, this Court has repeatedly upheld reductions in attorneys' fees for duplicative or excessive billing. *See, e.g.*, *Coulter v. State of Tenn.,* 805 F.2d 146, 152 (6th Cir. 1986) (upholding a fee reduction on the grounds of excessive billing); *Hudson*, 130 F.3d at 1209 (upholding a 25% reduction in fees award for duplication of efforts).

The magistrate judge found that Plaintiff's counsel inappropriately billed for excessive and unnecessary hours and provided inadequate descriptions of the work conducted during the requested hours. The report and recommendation provides a plethora of examples of excessive, unnecessary, vague and/or inappropriate billing entries. Plaintiff concedes that an across-the-board reduction in attorneys' fees is appropriate in light of Plaintiff's attorneys' "accounting issues"; however, Plaintiff contends that the magnitude of the overall reduction is excessive, and a 10-15% reduction would be more appropriate. *Appellant's Reply Br.* at 9.

We find that the explanation given in the magistrate judge's report and recommendation provides a sufficient justification for reducing Plaintiff's requested hours in light of Plaintiff's

limited success and Plaintiff's attorneys' billing deficiencies. However, the *magnitude* of the district court's reduction is unsupported by the record. The purpose of 42 U.S.C. § 1988 is to "ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94–1558, p.1 (1976)). Affirming a reduction of 85% in this case would work against this purpose by discouraging attorneys from representing clients in civil rights actions for fear that their fees will be dramatically reduced by the court.

We have identified no other cases in this Circuit in which a court reduced an attorney's requested compensable hours by so high a percentage, and only two cases in which a court reduced an attorneys' fees award by more than 75% overall. First, in *Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778 (E.D. Mich. 2011), the district court reduced two attorneys' requested compensable hours under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* by 70% and reduced the overall attorneys' fees award by approximately 80%. In so doing, the court undertook an analysis of the attorneys' invoices and found that "[t]he sheer number of hours claimed by both attorneys *significantly exceeds the number of hours the Court has ever been asked to compensate a party in any similarly contested action*." *Id.* at 784 (emphasis added); *but see Bell v. Prefix, Inc.*, 565 F. App'x 498, 504 (6th Cir. 2013) (Moore, *J.* dissenting) ("Such a drastic cut necessitates a more thorough and specific explanation."). Second, in *Helfman v. GE Grp. Life Assur. Co.*, No. 06-13528, 2011 WL 1464678 (E.D. Mich. Apr. 18, 2011), the district court reduced the plaintiff's requested attorneys' fees award by 87.5% to account for the fact that plaintiff was awarded disability benefits for only 12.5% of the months for which he sought benefits. *Id.* at \*10.

Such large reductions are exceptionally rare, and, in the instant case, greater justification is needed to impose such an aberrational reduction. Neither the report and recommendation nor

the district court's order provides a sufficient basis for a reduction of this magnitude. Plaintiff's attorneys litigated the instant case over three years. Although they were unsuccessful on most of their claims, their efforts resulted in a preliminary injunction enjoining the enforcement of Ohio's blackout provisions against Plaintiff's advertisements in the days preceding the November 4, 2008 election and a consent decree in which Defendants acknowledged the unconstitutionality of some of Ohio's challenged campaign finance laws.

This Circuit has not articulated a clear requirement that when an across-the-board reduction to attorneys' fees is based on multiple factors, the court must specify how much of the reduction is attributable to each factor; nor do we do so today. However, in certain circumstances, the specificity that would result from such disaggregation would facilitate the appellate court's review. In *Wayne v. Vill. of Sebring*, 36 F.3d 517 (6th Cir. 1994), a case involving the award of attorneys' fees to a prevailing party in a discrimination suit, we held that the district court erred when it "did not make it at all clear how much of the time it disallowed was attributed to excessiveness or duplication, and how much was attributed to its theory of limited success." *Id.* at 533. The Court found that the trial court had abused its discretion by applying an across-the-board reduction to an attorneys' fees award on a theory of limited success, but that it had not abused its discretion in determining that a reduction was warranted due to Plaintiff's counsel's excessive and duplicative billing. Because the trial court had not specified how much of its overall reduction was accounted for by each theory, the Court was unable to adequately review the portion of the award that may have been permissible. *Id.* Similarly, in this case, the district court did not articulate what portion of its reduction was associated with the Plaintiff's limited success, lack of billing judgment, and inadequate billing documentation, respectively. Therefore, while it is possible that the portion of the reduction

attributed to limited success alone, or billing deficiencies alone, might be reasonable by itself, the district court's explanation does not equip this Court to evaluate each basis independently.

In sum, while it was not an abuse of discretion to reduce Plaintiff's attorneys' fees award in light of Plaintiff's partial success and billing deficiencies, the district court abused its discretion in reducing Plaintiff's requested hours by 85%.

## B. Plaintiff's Request for Costs

### 1. Standard of Review

This court reviews a district court's denial of costs and expenses for abuse of discretion. *Andretti v. Borla Performance Indus., Inc.,* 426 F.3d 824, 835 (6th Cir. 2005).

### 2. Analysis

As part of an attorneys' fees award, § 1988 allows district courts to award "those incidental and necessary expenses incurred in furnishing effective and competent representation." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (citations omitted). Such expenses include "[r]easonable photocopying, paralegal expenses, and travel and telephone costs." *Id.* (quoting *Northcross v. Bd. of Educ. of Memphis City Sch.,* 611 F.2d 624, 639 (6th Cir.1979)). It is the responsibility of the prevailing party to document and provide evidence regarding the reasonableness of the costs and expenses for which it is seeking an award. *See, e.g.*, *Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 229 (6th Cir. 2005) (affirming a trial court's denial of costs because the prevailing party "failed to submit any evidence or argument that might support an allowance of these costs" including "how the charges were reasonably related to the issues raised in the . . . litigation.").

With the exception of one filing fee expense that the district court agreed to award, the magistrate judge found Plaintiff's documentation of its costs and expenses "woefully

inadequate." (R. 114, Report and Recommendation, Page ID # 1353.) Many of Plaintiff's requested expenses take the form of statements such as "Computer Research," "Delivery Fee," and "Document Reproduction" without further explanation. Additionally, Plaintiff submitted expenses that do not appear related to the case at hand, such as a $160 charge for "Medical Records."

Plaintiff does not argue that the magistrate judge erred in finding its explanation of expenses to be lacking, but rather argues that it should have been awarded an opportunity to provide further detail to substantiate its alleged expenses. As noted by the district court, "Plaintiff had several opportunities to provide a detailed explanation of costs, in its original submission, its supplemental memorandum and even in the objections." *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, No. 2:08-CV-00492, 2014 WL 234677, at *2 (S.D. Ohio Jan. 22, 2014). Accordingly, the district court did not abuse its discretion by denying Plaintiff's request for costs and expenses.

### C. Recipient of Attorneys' Fees Award

#### 1. Standard of Review

We review *de novo* whether the district court erred in ordering that attorneys' fees be paid to Plaintiff's previous law firm rather than to Plaintiff directly, since this issue turns on a question of statutory interpretation. *See Riley v. Kurtz*, 361 F.3d 906, 910-11 (6th Cir. 2004) ("Statutory interpretation . . . is subject to *de novo* review.").

#### 2. Analysis

Plaintiff argues that the district court erred by, *sua sponte*, ordering that Defendants should pay the attorneys' fees award to the law firm that had previously represented Plaintiff rather than to Plaintiff itself. The Supreme Court has held that "the term 'prevailing party' in fee

statutes is a 'term of art' that refers to the prevailing litigant." *Astrue v. Ratliff*, 560 U.S. 586, 591 (2010). In *Astrue*, the Supreme Court articulated that "the party, rather than the lawyer, is entitle[d] to receive the fees under § 1988(b), and that the statute controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Id.* at 598 (quoting *Venegas v. Mitchell*, 495 U.S. 82, 87-88, 90 (1990) (citations and quotation marks omitted)). The district court therefore erred by directing Defendants to pay the attorneys' fees award to Plaintiff's previous law firm rather than to Plaintiff itself.

## CONCLUSION

For the foregoing reasons, we **VACATE** the district court's order awarding attorneys' fees and costs totaling $29,107, and **REMAND** the case to the district court for recalculation of the attorneys' fees award and for further proceedings consistent with this opinion.

**HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part.**

I agree with the majority's conclusions in Parts II.B and II.C that the district court did not err in its determination of the reasonable attorney hourly rate, but did appear to err when it made the award payable to the law firm rather than Plaintiff Ohio Right to Life Society, Inc. (ORTL).[1] I dissent from the majority's conclusion in Part II.A that although the district court provided "a sufficient justification for reducing [ORTL]'s requested hours in light of [its] limited success and [its] attorneys' billing deficiencies," the "*magnitude*" of the district court's 85% reduction requires "greater justification." Maj. Op. 12–13 (emphasis in original). I find sufficient justification in the record and would affirm the amount of the award.

**I.**

"'[T]he most critical factor' governing the reasonableness of a fee award 'is the degree of success obtained.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Where "a plaintiff obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained.'" *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (quoting *Hensley*, 461 U.S. at 435). A district court may simply reduce the award to account for the limited success, or it may eliminate the excessive hours; the approach the court chooses is within its discretion. *Hensley*, 461 U.S. at 436–37; *see also Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005) (citing *Coulter v. Tennessee*, 805 F.2d 146, 152 (6th Cir. 1986) (holding that a district court may apply an across-the-board reduction based on "excessive or duplicative hours" and approving a 50% across-the-board reduction where "duplication of effort is a serious problem"). Given that the district court's conclusion that ORTL achieved limited

---

[1] The record does not establish that ORTL "waive[d], settle[d], or negotiate[d]," or otherwise assigned, its fee claim. *See Venegas v. Mitchell*, 495 U.S. 82, 88 (1990).

success is unassailable (ORTL prevailed on two unopposed claims), the court's award is entitled to "substantial deference." *United Steel v. Kelsey-Hayes Co.*, 750 F.3d 546, 560 (6th Cir. 2014) (quoting *Imwalle v. Reliance Med. Prod.*, Inc., 515 F.3d 531, 551 (6th Cir. 2008)). I would affirm on this basis alone.

## II.

I do not agree that the district court failed to provide "a sufficient basis for a reduction of this magnitude." Maj. Op. 13. The magistrate judge's (MJ) forty-seven page report and recommendation provides clear and detailed explanations of the reasons for the recommended reduction. *Cf. Hensley*, 461 U.S. at 437 (emphasizing that a district court should "provide a concise but clear explanation of its reasons for the fee award"). The reduction is based on three findings: (1) the total number of hours ORTL's counsel spent was not reasonable in relation to ORTL's limited success; (2) ORTL's counsel failed to exercise billing judgment by claiming unnecessary, excessive, and inappropriate hours; and (3) ORTL's counsel failed to submit adequate fee documentation. *See Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n* ("*ORTL*"), No. 2:08-CV-492, 2013 WL 5728255, at *23 (S.D. Ohio Oct. 22, 2013). These findings are not clearly erroneous. Although the majority appears to agree, it finds the explanation inadequate in light of ORTL's at least limited success. But it is undisputed that ORTL's limited success was achieved in two uncontested proceedings.

Additionally, the majority suggests it could have affirmed portions of the award had the district court "articulate[d] what portion of the reduction was associated with the Plaintiff's limited success, lack of billing judgment, and inadequate billing documentation, respectively." Maj. Op. 14. The MJ's report states: "The Undersigned's recommendation that the Court apply a ninety-percent reduction to the hours requested is not premised upon the consideration of

Plaintiff's limited success alone. Rather, this recommendation is *equally attributable* [to] the Undersigned's finding that Plaintiff's counsel failed to properly exercise billing judgment and adequately document time expended . . . ." *ORTL*, 2013 WL 5728255, at *16 (emphasis added). Despite this explanation, the majority does not perform the review it suggests it would have conducted had the district court proffered the explanation. I conclude the explanation provided was adequate.

Further, the MJ's finding that the total number of hours ORTL's counsel spent on the litigation was excessive in relation to ORTL's limited success is inextricably intertwined with the finding of numerous billing errors. *Id.* at *10. The exercise of billing judgment requires counsel to exclude from its fee petition hours that are "'excessive, redundant, or otherwise unnecessary.'" *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 434). This means counsel "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," so that the court can independently determine whether the applicant's claimed hours are reasonable in relation to the success achieved. *Hensley*, 461 U.S. at 437.

ORTL's counsel failed to exclude from the fee request the hours spent on ORTL's unsuccessful claims, leaving the task for the court. But as the MJ found, it was "impossible . . . to ascertain the number of hours [ORTL]'s counsel expended on the successful claims due to counsel's practice of lumping billing entries and utilizing vague descriptions." *ORTL*, 2013 WL 5728255, at *16; *cf. Sykes v. Anderson*, 419 F. App'x 615, 618 (6th Cir. 2011) (affirming 25% reduction in case where "the district court found it too difficult to address each item [in the fee documentation] individually"). In other words, counsel's inadequate billing records precluded the court from determining which hours in the fee petition were excessive in

relation to the results obtained. *See ORTL*, 2013 WL 5728255, at *19. The district court did not abuse its discretion by applying the 85% across-the-board reduction. *See Hensley*, 461 U.S. at 436–37 (holding that district court "may simply reduce the award to account for the limited success").