NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0600n.06

Nos. 19-4042/4088

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 22, 2020
DEBORAH S. HUNT, Clerk

DENNIS G. RICHARD,                                          )
                                                           )
    Plaintiff-Appellant/Cross-Appellee,                    )
                                                           )
    v.                                                     )    ON APPEAL FROM THE
                                                           )    UNITED STATES DISTRICT
CALIBER HOME LOANS, INC.; VOLT RPL XI                      )    COURT FOR THE
ASSET HOLDINGS TRUST,                                      )    SOUTHERN DISTRICT OF
                                                           )    OHIO
    Defendants-Appellees/Cross-Appellants.                 )
                                                           )

BEFORE:    BATCHELDER, GRIFFIN, and MURPHY, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Dennis Richard and Caliber Home Loans, Inc. ("Caliber") spent years litigating a mortgage dispute. This appeal arises out of the third lawsuit between the two parties. The only issue that remains is whether the district court abused its discretion by awarding Richard's attorney $29,207.46 in attorney's fees and costs. For the following reasons, we AFFIRM.

**I.**

Because the only issue on appeal is the district court's awarding attorney's fees, we need not recount in detail the parties' lengthy litigation history. This appeal arises in the context of Richard's third lawsuit against Caliber; the first two ended in settlement and dismissal. In this third lawsuit, filed on July 23, 2015, Richard alleged that Caliber violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601,

*et seq.* On July 20, 2018, Caliber made an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure, which Richard accepted on August 3rd. After the two parties failed to reach an agreement on attorney's fees, Richard filed a Motion for Attorney's Fees on September 4, 2018, seeking $207,949.40 in attorney's fees and $3,918.02 in costs, for a total of $211,867.42. Caliber filed a motion in opposition, arguing that the court should award Richard no more than $19,999.15 in attorney's fees and costs. Citing a series of serious billing deficiencies and inconsistencies, the district court granted Richard's motion in part, awarding his counsel only $29,207.46 in attorney's fees and costs.[1] Richard timely appealed and Caliber filed a protective cross-appeal.

## II.

### A. Standard of Review

"We review a district court's award of attorney['s] fees using the abuse-of-discretion standard." *Coursey v. Comm'r of Soc. Sec.*, 843 F.3d 1095, 1097 (6th Cir. 2016). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Id.* (quoting *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 497 (6th Cir. 2014)). "The primary concern in an attorney['s] fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).

"The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007). There is a "strong presumption that the lodestar figure . . . represents a

---

[1] The case was referred to the magistrate judge upon receipt of written consent of all parties. *See* R. 119, Page ID #3337.

'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). We have previously held that there are twelve factors the district court may consider in adjusting the lodestar value. *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 n.8 (6th Cir. 2000) (listing factors). But with respect to the calculation of attorney's fees for claims brought under 42 U.S.C. § 1997e and 42 U.S.C. § 1988, the Supreme Court has moved away from overreliance on those twelve factors. *See Murphy v. Smith*, 138 S. Ct. 784, 790 (2018) ("[T]his Court rejected undue reliance on the 12–factor test because it 'gave very little actual guidance to district courts, placed unlimited discretion in trial judges, and produced disparate results.'" (cleaned up) (quoting *Del. Valley*, 478 U.S. at 563)); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("The [twelve] factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation.").

Though the Supreme Court's holdings do not necessarily extend to fee-shifting claims brought under provisions other than § 1988 or § 1997e, we recognize that courts should look to the lodestar value as a "starting point," which may be adjusted based on other factors so long as courts do not put "undue reliance on the 12-factor test." *Murphy*, 138 S. Ct. at 790; *Gonter*, 510 F.3d at 616. When reviewing an attorney's fee claim brought under § 1988, the Supreme Court explained that "[d]etermining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, . . . but the judge's discretion is not unlimited." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010) (citing 42 U.S.C. § 1988). The Court instructed that "[i]t is essential that the [trial] judge provide a reasonably specific explanation for all aspects of a fee determination," including adjustments, because "[u]nless such an explanation is given, adequate appellate review is not feasible." *Id.* Accordingly, we have held that "[t]he district

court's calculation of the lodestar value, as well as any justifiable upward or downward departures, deserves substantial deference, but only when the court provides 'a clear and concise explanation of its reasons for the fee award.'" *Gonter*, 510 F.3d at 616 (footnote and citations omitted).

Here, the district court laid out in specific detail its explanation. The court noted that its lodestar calculation would be based upon "the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate," not the amount of hours the attorneys actually billed at their listed rate. *Richard v. Caliber Home Loans, Inc.*, No. 2:15-cv-02647, 2019 WL 4751741, at *4 (S.D. Ohio Sept. 30, 2019) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added by district court)). The district court also noted that it was relying upon the eight factors listed in Ohio Rule of Professional Conduct 1.5 to consider whether the lodestar value needed to be modified in order for the attorney's total fee award to be reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.

*Richard*, 2019 WL 4751741, at *2–3 (quoting Ohio R. Prof'l Conduct 1.5(a)(1)–(8)). Because the district court provided a clear explanation, we give the court's calculations substantial deference.

## B. District Court's Calculations

Richard argues that the district court abused its discretion by (1) reducing counsel's hourly rates by 20 percent across-the-board; (2) reducing the total award by 30 percent for limited success;

(3) reducing the total award by another 50 percent for billing deficiencies; and (4) excluding fees and costs incurred after the offer of judgment was made.[2] Caliber defends the district court's judgment as reasonable and filed a protective cross-appeal. For the following reasons, we find that the district court did not abuse its discretion in awarding Richard's attorney only $29,207.46 in fees and costs, and we accordingly affirm the court's judgment.

## 1. District Court's Across-the-Board 20 Percent Reduction in Hourly Rates

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791. The district court provided three reasons to justify an across-the-board reduction in Richard's counsel's hourly rates: (1) concerns with Richard's counsel's submissions to the court; (2) the attorneys' and paralegals' experience level and geographic location; and (3) the court's own knowledge and experience.

First, the district court was bothered by Richard's counsel's reporting to the court. During the course of the litigation, Richard's team of attorneys and paralegals billed at rates ranging from $95/hour to $385/hour. But in his Motion for Attorney's Fees, Richard's counsel claimed a substantial increase in their rates, ranging from $110 to $565 per hour. Notably, the billing records that Richard's counsel sent to the district court did not include the hourly rates (unlike the billing records sent to Caliber). When Caliber pointed this out to the district court, Richard never addressed it, and the district court noted that it was "disturbed by this omission" and was "left to assume that [Richard] omitted this information in an effort to avoid bringing the Court's attention to the stark contrast between his counsel's actual hourly rates compared to the rates he is now

---

[2] Richard does not appeal the district court's determination that he cannot recover the 6.9 hours billed on December 12, 2016, because that entry was a "billing mistake" or the district court's determination that he cannot recover attorney's fees under Ohio Revised Code § 2323.51 on the grounds that Caliber's counterclaims were allegedly "frivolous." *See Richard*, 2019 WL 4751741, at *3–4.

requesting his counsel be awarded." *Richard*, 2019 WL 4751741, at *5, *6. Similarly, the district court questioned why Richard's counsel sought a rate of $265 per hour for Christopher Gant's work in September 2016, even though Mr. Gant was not yet licensed to practice law at the time and, under counsel's agreement with Richard, law clerks were to be paid no more than $115 per hour. *See id.* at *6 n. 10.

Second, the district court found that Richard's counsel's billing rate was not reasonable for the attorneys' and paralegals' experience and geographic location. Richard argues that the district court wrongly discounted his expert's testimony, which Richard relied upon to support his increased billing rates as reasonable and in line with the market rate for the area. However, under the abuse-of-discretion standard, we do not reweigh one expert's testimony against another's. Indeed, we review attorney-fee appeals under this deferential standard because "of a district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," such as the local billing rate. *Wilson-Simmons v. Lake Cty Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (quoting *Eckerhart*, 461 U.S. at 437). The district court explained why it did not rely on Richard's expert's testimony, noting that the expert practiced in a different Ohio market than Richard's counsel and the expert's declaration estimated the attorneys' and paralegals' experience in 2018, not at the time of the litigation three years earlier. *Richard*, 2019 WL 4751741, at *6 & nn.7 & 8. Richard challenges the district court's decision to use historical rates rather than current rates. But "the district court has the discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees." *Gonter*, 510 F.3d at 617. Here, the district court explained itself fully and therefore did not abuse its discretion by relying on the earlier rates.

Third and finally, it was reasonable for the district court to base its award on the rates Richard's counsel "customarily charged, based on the billing records [Richard's counsel] sent to [Caliber]," *Richard*, 2019 WL 4751741, at *7. *See Gonter*, 510 F.3d at 617–18. Even if the party's "customary rate may not have been the best evidence of the prevailing market rate, it was not an abuse of discretion to award fees based on it." *Dowling v. Litton Loan Serv. LP*, 320 F. App'x 442, 447 (6th Cir. 2009). And we have held that it is acceptable for a court to base its decision "on the court's knowledge of local billing practices." *Id*.

Furthermore, the district court noted that "[t]his case is not the first in which the Court has raised similar concerns regarding the paralegals at [Richard's counsel's firm,] Doucet & Associates Co., L.P.A." *Richard*, 2019 WL 4751741, at *8. In a prior case, the court stated:

> [F]ive paralegals billed at rates between $95 and $148 per hour. Based on the resumes submitted by Plaintiffs, it appears that four of the paralegals had no paralegal experience prior to joining Mr. Doucet's firm. Additionally, it is not clear when any of the paralegals actually joined the firm, thus making it impossible for the Court to determine their exact level of experience. In the OSBA survey, a paralegal with no experience typically earns less than $80 per hour (finding that more than 58% of paralegals with no experience make $80 or less an hour). Moreover, the fee agreement provides that the hourly rates of paralegals are generally "$65-115 per hour." Plaintiffs offer no explanation for why one paralegal billed at a rate of $148/hour.
>
> *Based on the foregoing, the hourly rates requested are a concern—one that has been shared in other cases involving Plaintiffs' counsel. See Barrett* [*v. Green Tree Serv.*, 214 F. Supp. 3d 670,] 674 [(S.D. Ohio 2016)] (noting that the Court was concerned "about the reasonableness of the hourly rates requested by Plaintiff's attorneys" because "the fee agreement presented to the Court represents that Mr. Doucet's agreed hourly rate" was less than what the firm ultimately charged).

*Morse v. Specialized Loan Serv., LLC*, No. 2:16-cv-689, 2018 WL 549372, at *3 (S.D. Ohio Jan. 25, 2018) (emphasis added; record citations omitted). In short, we give the district court's calculations and adjustments substantial deference so long as it explains its reasons clearly. Here, the court thoroughly detailed the omissions in Richard's submissions to the court, the shortcomings

of his expert, and the court's own knowledge of both the local market rates and Richard's counsel's firm's history of claiming inflated rates. We find that the district court did not abuse its discretion.

### 2. District Court's 30 Percent Reduction in Total Award for Richard's Limited Success

Richard did not prevail on two of his four claims—his RESPA claim and his claim seeking a declaration that he was not delinquent on his mortgage account—and he accepted a $15,000 judgment that was only about one-eighth of his settlement demands earlier in the litigation. Because Richard achieved only "limited success," the district court needed to decide by what amount to discount Richard's counsel's total fee. *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."). When a court is determining the amount of fees to award, "the most critical factor is the degree of success obtained." *Id.*

The court determined first that Richard's RESPA claim (on which Richard did not prevail) was not so "factually and legally distinct" from his "'successful' claims under the FDCPA and TILA as to render consideration of the fees associated with [the RESPA claim] severable." *Richard*, 2019 WL 4751741, at *9. And because Richard's counsel's "billing records [were] not so detailed that the Court [could] identify what number of hours was spent on the issue of delinquency alone," *see infra* Part II.B.3, "and because it [was] not possible to reduce specific hours based on the $15,000 that [Richard] recovered," the district court determined that a percentage reduction was proper. *Richard*, 2019 WL 4751741, at *10. Any adjustment in "the award of attorney's fees must [] be proportional to [the plaintiff's] recovery." *Dowling*, 320 F. App'x at 449. The district court concluded that a 30 percent reduction in the total award of

attorney's fees was appropriate given Richard's limited success. *Richard*, 2019 WL 4751741, at *10.

The district court's decision to reduce the total award by 30 percent is owed "substantial deference." *See Gonter*, 510 F.3d at 616. We have previously affirmed similarly sized reductions that were justified by the plaintiffs' only partial success, not unlike Richard's limited success here. *See*, *e.g.*, *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 421 (6th Cir. 2004) (affirming a district court's 35 percent reduction of the total fee award because the "appellants obtained a 'good' but not an 'excellent' result"); *Allen v. Allied Plant Maint. Co. of Tenn., Inc.*, 881 F.2d 291, 299–300 (6th Cir. 1989) (affirming a 35 percent reduction for "limited success"). Moreover, even if "it might have been reasonable for the trial court to award the full amount of requested fees . . . , [a] 35% reduction for partial success can not be characterized as an abuse of discretion." *Ky. Rest. Concepts Inc.*, 117 F. App'x at 421. For these reasons, we find that the district court did not abuse its discretion by reducing the total fee award by 30 percent due to Richard's limited success.

### 3. District Court's 50 Percent Reduction in Total Award Fees for Richard's Counsel's "Billing Deficiencies"

The district court concluded that a 50 percent reduction in the total fee award was justified because of Richard's counsel's serious billing deficiencies. *Richard*, 2019 WL 4751741, at *11. These billing deficiencies included: (1) counsel's submitting records to the district court that did not include the hourly rate, the total amount owed per transaction, or which person was billing; (2) there were 65 more time entries in the billing records submitted to the district court than in the billing records submitted to Caliber (Richard's counsel admitted the mistake but claimed that it was inadvertent); and (3) other mistakes, such as incorrectly recording 6.9 hours billed on December 12, 2016, for a deposition when no deposition took place on that day. And this was not

the first case in which Richard's counsel's billing practices had been questioned. *See Morse v. Specialized Loan Serv., LLC*, 2018 WL 1725693, at \*2, \*3 (S.D. Ohio Apr. 10, 2018) (noting that "Plaintiffs had seven attorneys billing on this case, four of whom were not even admitted to the bar at the time the Complaint was filed," and that the "second, third, fourth, fifth, and sixth factor[s] [of Ohio R. Prof'l Conduct 1.5(a)] counsel lower hourly rates than those charged by Plaintiffs' counsel in this case").

"Supreme Court and Sixth Circuit precedent clearly permit trial courts to reduce attorneys' fees awards '[w]here the documentation of hours is inadequate.'" *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014) (quoting *Reed*, 179 F.3d at 472 (quoting *Hensley*, 461 U.S. at 433)). "This Circuit has held that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *Id.* (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008)). And district courts throughout this circuit have instituted similarly sized reductions for billing deficiencies. *See*, *e.g.*, *Healthcall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, 632 F. Supp. 2d 676, 684–85, 687 (E.D. Mich. 2009) (explaining that a 40 percent reduction in the fees award was justified because of similar billing issues, including overcharging a junior associate's rate, failing to keep accurate records, and failing to explain entries in detail).

Citing *Ohio Right to Life Society*, 590 F. App'x at 605, Richard argues that the district court abused its discretion by imposing a 50 percent reduction in addition to the 30 percent reduction. But in that case, we found an abuse of discretion because "the district court did not articulate what portion of its reduction was associated with the Plaintiff's limited success, lack of billing judgment, and inadequate billing documentation, respectively." *Id.* Here, the district court detailed clearly

what portion of its reduction was associated with Richard's lack of success (30 percent), the billing deficiencies (50 percent), and overstating counsel's rates based on their experience and geographic location (20 percent reduction in counsel's hourly rate, not total award). And even though we reversed the district court's 85 percent reduction in *Ohio Right to Life Society*, we explained that "it [was] possible that the portion of the reduction attributed to limited success alone, or billing deficiencies alone, might be reasonable by itself," but "the district court's explanation does not equip this Court to evaluate each basis independently." *Id.* The district court's detailed explanations avoid that issue here, so we do not find an abuse of discretion.

### 4. District Court's Excluding Post-Offer Expenses

The district court rejected Richard's claim for attorney's fees incurred after July 20, 2018—the date Caliber made the Offer of Judgment—because the offer stated that the "judgment is entered in the amount of $15,000.00, plus reasonable costs and attorney's fees, *incurred by Plaintiff on or before the date of the making of the Offer of Judgment*, in an amount to be determined by the Court." *Richard*, 2019 WL 4751741, at *3. Accordingly, the district court rejected the 27.36 hours billed after July 20, 2018, and the $2,5000 in costs incurred on August 30, 2018. *Id.*

On appeal, Richard claims that the district court erred because (1) courts have previously permitted the prevailing party to recover fees incurred after the offer of judgment, including fees incurred on appeal, and (2) to the extent that Rule 68 limits his ability to recover fees, the rule conflicts with multiple federal statutes, including the fee-shifting provisions of the FDCPA and RESPA. Neither of Richard's arguments respond to the district court's reasoning: that Richard's consenting to the terms of the Offer of Judgment means that his counsel cannot recover fees incurred after the date of the making of the Offer of Judgment. The question is not whether

Richard's counsel had the right to attorney's fees incurred after the Offer of Judgment under federal statute or Sixth Circuit case law; the question is whether his counsel had that right *after* Richard agreed to the Offer of Judgment, which expressly limited his ability to recover fees after a certain date. Though Richard makes no argument responding to that latter question, we note that, under our precedent, Rule 68 offers of judgment are interpreted according to "general contract principles." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 837 (6th Cir. 2005). Here, the parties voluntarily agreed that a $15,000 judgment in favor of Richard, "plus reasonable costs and attorney's fees[] incurred by [Richard] on or before the date of the making of the Offer of Judgment." By the agreement's plain terms, Richard freely agreed to limit his attorney's fees to those that occurred on or before July 20, 2018. The district court did not err by rejecting Richard's claims for fees and costs incurred after that date.

### 5. District Court's Calculations

In total, the district court reduced Richard's counsel's hourly rates by 20 percent and then reduced the remaining total award by 80 percent (50 percent due to counsel's billing deficiencies and 30 percent for Richard's limited success), not including the already-excluded fees, *i.e.*, the fees claimed under O.R.C. § 2323, the fees and costs incurred after July 20, 2018, and the fees mistakenly billed on December 12, 2016. *See Richard*, 2019 WL 4751741, at *12 (tabulating the district court's calculations). We find no error with the district court's calculations.

### C. Caliber's Cross-Appeal

Caliber filed a protective cross-appeal. "We have allowed parties to bring protective cross-appeals to be considered in the event that the appellant . . . succeeds in its own appeal." *Martin Cty Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 598 (6th Cir. 2013). "A protective cross-appeal differs from a cross-appeal because the protective cross-appellant is not

necessarily dissatisfied with the judgment. Appellate courts generally allow protective cross-appeals but do not consider them unless it is appropriate to do so after the disposition of the appeal." *Id.* (internal alterations and citation omitted). In its protective cross-appeal, Caliber states that if "the Court finds no merit in [Richard's] appeal, the Court need not consider this cross-appeal and can affirm the judgment below." Because we find no merit in Richard's appeal, we need not consider Caliber's protective cross-appeal.

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court.